UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

IESHA K.G.,[1]

                          Plaintiff,                                19-CV-948Sr

v.

COMMISSIONER OF SOCIAL SECURITY,

                          Defendant.
_____

## DECISION AND ORDER

As set forth In the Standing Order of the Court regarding Social Security Cases subject to the May 21, 2018 Memorandum of Understanding, the parties have consented to the assignment of this case to the undersigned to conduct all proceedings in this case, including the entry of final judgment, as set forth in 42 U.S.C. § 405(g). Dkt. #16.

## BACKGROUND

Plaintiff applied for disability insurance benefits with the Social Security Administration ("SSA"), on January 22, 2015, alleging disability beginning December 1, 2013, at the age of 38, due to neck problems, stomach problems, irritable bowel syndrome and depression. Dkt. #7, p.515.

---

[1] As set forth In the Standing Order of the Court filed November 18, 2020, any non-government party in a proceeding pursuant to section 205(g) of the Social Security Act will be identified and referenced solely by first name and last initial.

On November 28, 2017, plaintiff appeared with counsel and testified, along with an impartial vocational expert ("VE"), Sharon Ringenberg, at an administrative hearing before Administrative Law Judge ("ALJ"), David Begley. Dkt. #7, pp.482-514. Counsel clarified that plaintiff was claiming disability for a closed period from December 1, 2013 through December 17, 2015. Dkt. #7, p.486.

Plaintiff testified that she is right hand dominant. Dkt. #7, p.489. She completed 12th grade and is a Certified Nursing Assistant. Dkt. #7, p.495. She has a driver's license, but was unable to drive because of the pain and stiffness in her neck and spasms in her neck and back. Dkt. #7, p.494. She experienced pain in her neck with radiation into her arms which prevented her from grabbing and holding things with both arms. Dkt. #7, p.496. Just holding her head up caused neck pain. Dkt. #7, p.497. She took pain medication, but nothing stopped the pain. Dkt. #7, p.497. The pain medication made her drowsy and dizzy. Dkt. #7, p.501. She would stagger the pain medication so that she could care for her children and relied upon her children or her mother to help with chores. Dkt. #7, p.498. She was unable to sit, stand or do anything for any length of time. Dkt. #7, p.499. If she stood for more than a half hour, her legs would go numb and buckle. Dkt. #7, p.499. Her mother or children would help her bathe and get dressed. Dkt. #7, p.502. She couldn't wipe herself or hold a washcloth or brush her teeth or lift her arms to do her hair. Dkt. #7, p.506. She couldn't lift a gallon of milk. Dkt. #7, p.507. Friends and family helped her with cooking and caring for her children. Dkt. #7, p.502. She was in too much pain to attend church and felt depressed because she couldn't do anything. Dkt. #7, p.507. She continued to have neck pain, spasms, arm pain and weakness until she healed from surgery. Dkt. #7, p.496.

The VE classified plaintiff's past work as quality checker, which is a semi-skilled, light exertion position; group home worker, which is a skilled, light exertion position; house manager, which is a skilled, light exertion position; and personal care aide, which is a semi-skilled, medium exertion position. Dkt. #7, p.509. When asked to assume an individual with plaintiff's age, education and past work experience who could perform a full range of light work, except that she would be limited to occasional pushing and pulling and occasional reaching and overhead reaching with the left upper extremity; occasional balancing, stooping, kneeling, crouching or crawling; no climbing of ladders, ropes or scaffolding; and no exposure to hazardous machinery, unprotected heights and open flames or slippery and uneven surfaces, the VE testified that such an individual could perform plaintiff's past work as a group home worker. Dkt. #7, p.509. If plaintiff was limited to sedentary exertion, the VE testified that plaintiff could work as a call-out operator or surveillance system monitor. Dkt. #7, p.511.

The ALJ rendered a decision that plaintiff was not disabled on April 4, 2018. Dkt. #7, pp.17-28. The Appeals Council granted review and corrected the date of plaintiff's alleged period of disability, but otherwise adopted the determination of the ALJ. Dkt. #7, pp.5-11 & 601-604. Plaintiff commenced this action seeking review of the Commissioner's final decision on July 18, 2019. Dkt. #1.

## DISCUSSION AND ANALYSIS

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in

the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501 (2d Cir. 2009). If the evidence is susceptible to more than one rational interpretation, the Commissioner's determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

To be disabled under the Social Security Act ("Act"), a claimant must establish an inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 404.1505(a). The Commissioner must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 404.1520(a). At step one, the claimant must demonstrate that he is not engaging in substantial gainful activity. 20 C.F.R. § 404.1520(b). At step two, the claimant must demonstrate that he has a severe impairment or combination of impairments that limits the claimant's ability to perform physical or mental work-related activities. 20 C.F.R. § 404.1520(c). If the impairment meets or medically equals the criteria of a disabling impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and satisfies the durational requirement, the claimant is entitled to

disability benefits. 20 C.F.R. § 404.1520(d). If the impairment does not meet the criteria of a disabling impairment, the Commissioner considers whether the claimant has sufficient RFC for the claimant to return to past relevant work. 20 C.F.R. § 404.1520(e)-(f). If the claimant is unable to return to past relevant work, the burden of proof shifts to the Commissioner to demonstrate that the claimant could perform other jobs which exist in significant numbers in the national economy, based on claimant's age, education and work experience. 20 C.F.R. § 404.1520(g).

In the instant case, the ALJ made the following findings with regard to the five-step sequential evaluation: (1) plaintiff had not engaged in substantial gainful activity during the relevant period between December 1, 2013 and December 17, 2015; (2) plaintiff's cervical degenerative disc disease status post fusion constitutes a severe impairment; (3) plaintiff's impairment did not meet or equal any listed impairment; (4) plaintiff retained the RFC to perform light work[2] with the following limitations: occasional pushing, pulling and reaching with the left upper extremity and occasional balancing, stooping, kneeling, crouching and crawling, no climbing of ladders, ropes or scaffolds, no slippery and uneven surfaces, hazardous machinery, unprotected heights

---

[2] Light work involves lifting no more than 20 pounds at a time and occasionally lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of dexterity or inability to sit for long periods of time.
20 C.F.R. § 404.1567(b).

or open flames; and (5) plaintiff was capable of performing her past work as a group home worker, which is a skilled, light exertion position, and was not, therefore, disabled within the meaning of the SSA. Dkt. #7, pp.20-28.

Plaintiff argues that the ALJ failed to properly evaluate plaintiff's subjective complaints of pain and limitation. Dkt. #10-1, pp.8-12.  More specifically, plaintiff argues that despite being prescribed multiple medications, injection therapy, physical therapy and undergoing surgery, she continuously complained of pain and limitations during the time period at issue. Dkt. #10-1, pp.9-10. Plaintiff also argues that it was improper to use plaintiff's willingness to return to work upon recovery against her. Dkt. #10-1, p.10. Finally, plaintiff argues that her activities of daily living do no contradict her complaints of pain and limitation or otherwise contraindicate a determination of disability for the time period at issue. Dkt. #10-1, p.11.

The Commissioner responds that the ALJ properly evaluated plaintiff's allegations and determined that they were not entirely consistent with the evidence of treatment, which supported the ALJ's determination that plaintiff was capable of light work during this time frame, except for the post-surgical recovery period. Dkt. #14-1, pp.5-10. The Commissioner argues that plaintiff's activities of daily living and work history supported the ALJ's determination that plaintiff was capable of performing her past relevant work. Dkt. #14-1, pp.11-12.

Plaintiff replies that the ALJ essentially disbelieved plaintiff's subjective complaints of pain despite consistent reports of pain within the medical record and despite evidence that supported her credibility, *to wit*, her willing return to work. Dkt. #15, p.1.

Plaintiff presented to UBMD Orthopaedics on December 27, 2013 with complaints of neck and left arm pain and weakness without apparent injury or trauma to her cervical spine. Dkt. #7, p.853. Kristin Bitikofer, PA-C, noted that it was difficult to determine if plaintiff's pain was referred from her cervical spine or her shoulder due to her profound weakness throughout the left upper extremity and requested an updated MRI of the cervical spine. Dkt. #7, p.854. Upon examination, PA Bitkofer observed a positive left shoulder impingement sign, but negative Hoffman's sign and normal reflexes at the biceps and triceps bilaterally with no tenderness on examination or palpation over the paraspinal muscles bilaterally. Dkt. #7, p.854.

Upon examination on February 5, 2014, following an MRI which revealed a C4-5 disc herniation, Christopher Hamill, M.D., noted some weakness of the left arm, especially with range of motion, but 5/5 motor strength in all muscle groups in plaintiff's upper extremities. Dkt. #7, p.855. Dr. Hamill referred plaintiff to physical therapy. Dkt. #7, p.855.

On December 2, 2014, plaintiff presented to Buffalo Orthopaedic Group with complaints of chronic bilateral shoulder pain and cervical pain for which she received bilateral injections. Dkt. #7, p.835. An MRI of plaintiff's cervical spine on

December 23, 2014 revealed moderate spinal stenosis at C4-C5 and a probable focal tear at C3-C4. Dkt. #7, p.838.

At a surgical consultation with UB Neurosurgery on February 4, 2015, plaintiff was noted to have tenderness on palpation of the cervical spine and paraspinal muscles, with 5/5 strength in all muscle groups in the upper and lower extremities bilaterally. Dkt. #7, p.864.

Plaintiff underwent an anterior cervical diskectomy and fusion at C4-C5 on February 19, 2015. Dkt. #7, p.861.

Upon post-operative examination on March 5, 2015, plaintiff noted that she still had some neck pain that radiated bilaterally into her shoulders and down her left upper extremity, with persistent paresthesias in her left upper extremity, but was noted to have no tenderness on palpation of the cervial spine or paraspinal muscles and 5/5 strength in all muscle groups in the upper extremities bilaterally. Dkt. #7, p.862. She reported that she was trying to keep her activity to a minimum, but had been doing a lot of cooking and daily activities, including caring for her children. Dkt. #7, p.861.

Upon consultative orthopedic examination by Samuel Balderman, M.D., on April 23, 2015, plaintiff was observed to have reduced flexion, extension and flexion of her cervical spine, but no paracervical pain or spasm and no trigger points. Dkt. #7, p.925. Her upper extremity strength in proximal and distal muscles was 5/5. Dkt. #7, p.925. Dr. Balderman opined that plaintiff would have moderate to marked limitation in

changes in position of the head and in reaching, pushing and pulling with the upper extremities for four months. Dkt. #7, p.926.

Upon consultative psychological examination by Susant Santarpia, Ph.D. on April 23, 2015, plaintiff reported that she was able to dress, bathe and groom herself and that she spent her days as primary caretaker to two minor children. Dkt. #7, p.915. Dr. Santarpia opined that plaintiff demonstrated mild impairment in performing complex tasks independently as a result of her lack of treatment for stress-related problems. Dkt. #7, p.916.

On April 28, 2015, plaintiff complained of neck pain that radiates into her left extremity with overall weakness and reported that she occasionally lifted things weighing more than 5 pounds, but tried not to lift anything more than a gallon of milk. Dkt. #7, p.942. The PA at UB Neurosurgery observed no tenderness on palpation of the cervial spine or paraspinal muscles and 5/5 strength in all muscle groups in the upper extremities bilaterally. Dkt. #7, p.918.

On June 29, 2015, the Physician's Assistant at UB Neurosurgery noted that plaintiff seemed to be progressing well post-operatively despite reports of significant soreness. Dkt. #7, p.946. Plaintiff was observed to have intact and symmetrical reflexes and 5/5 strength in all muscle groups in the upper and lower extremities bilaterally. Dkt. #7, p.946. She was referred to physical therapy for complaints of constant low back and right leg pain where she reported no limitation in self care, mobility, carrying, moving or handling of objects. Dkt. #7, p.949.

Plaintiff continued to report soreness in the back of her neck and occasionally into her arms along with numbness despite physical therapy, and also reported increasing pain in her low back upon examination on September 1, 2015. Dkt. #7, p.953. The Physician's Assistant at UB Neurosurgery noted intact and symmetrical reflexes and 5/5 strength in all muscle groups in the upper and lower extremities bilaterally. Dkt. #7, p.953.

An MRI of the lumbar spine on September 29, 2015 revealed a mild degenerative change centered at L3-L4. Dkt. #7, p.957. On October 9, 2015, the Nurse Practitioner at UB Neurosurgery remarked that plaintiff had no apparent spine etiology for her pain and recommended possible injections. Dkt. #7, p.960.

On December 16, 2015, plaintiff reported improvement in the post-operative soreness she had been experiencing and that she was tolerating regular exercise quite well. Dkt. #7, p.963. She requested a note to return to work and school as of December 17, 2015. Dkt. #7, pp.963-965.

When determining a claimant's RFC, an ALJ is required to take reports of pain and other limitations into account, but is not required to accept subjective complaints without question. *Genier v. Astrue,* 606 F.3d 46, 49 (2d Cir. 2010). The ALJ has discretion to evaluate the credibility of a claimant and to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant." *Poole v. Saul*, 462 F. Supp.3d 137, 157 (D. Ct. 2020). More specifically, in evaluating the intensity, persistence and limited effects of a

claimant's symptoms, the ALJ must consider several factors, including: (1) daily activities; (2) location, duration, frequency and intensity of the pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) type, dosage, effectiveness and side effects of medication; (5) treatment, other than medication; and (6) other measures used to relieve pain or other symptoms. SSR 16-3p, 2017 WL 5180304, at *7-8 (S.S.A. Oct. 25, 2017). An ALJ is not required to explicitly discuss each factor, but the basis for an ALJ's decision to reject a claimant's testimony regarding the extent of pain must be set forth with sufficient specificity to permit intelligible review of the record. *Franklin v. Saul*, 482 F. Supp.3d 250, 266 (S.D.N.Y. 2020). It is the function of the Commissioner, not the Court, to resolve evidentiary conflicts and appraise the credibility of the claimant. *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983).

        In the instant case, the ALJ determined that plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged, but that plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. Dkt. #7, p.25. Specifically, the ALJ determined that treatment notes and activities of daily living were not consistent with the level of limitation alleged. Dkt. #7, p.25.  Upon review of the record, the Court finds that this determination is supported by substantial evidence. For example, the Court notes the lack of any objective medical evidence of muscle weakness and plaintiff's report to medical providers that she occasionally lifted things weighing more than 5 pounds, but tried not to lift anything more than a gallon of milk conflicts with plaintiff's hearing

testimony that she was incapable of grabbing and holding things or lifting a washcloth or gallon of milk. Similarly, plaintiff reported to medical providers at various times that she cooked and cared for her children and was able to dress, bathe and groom herself while at her hearing she testified that she couldn't brush her teeth or do her hair and relied on her mother, children or friends to help her bathe, dress, cook and clean. In light of these contradictions, it was within the ALJ's discretion to conclude that plaintiff was capable of working in a light exertion position such as her past relevant work as a group home worker despite the limitations imposed by her cervical degenerative disc disease.

## CONCLUSION

Based on the foregoing, plaintiff's motion for judgment on the pleadings (Dkt. 10), is denied and the Commissioner's motion for judgment on the pleadings (Dkt. #14), is granted.

The Clerk of the Court is directed to close this case.

**SO ORDERED.**

**DATED:**  **Buffalo, New York**
**March 9, 2020**

                                     **s/ H. Kenneth Schroeder, Jr.**
                                     **H. KENNETH SCHROEDER, JR.**
                                     **United States Magistrate Judge**